UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DUSTIN PORTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAGGETT COUNTY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS (DOC. NO. 174) AND ORDER TO SHOW CAUSE**<br><br>Consolidated Case Nos. 2:18-cv-00389, 2:18-cv-00422, & 2:19-cv-00188<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs Dustin Porter, Steven Drollette, Joshua Asay, and Joshua Olson have filed a motion for sanctions[1] under Rule 11 of the Federal Rules of Civil Procedure.[2]  Plaintiffs contend counsel for the Daggett County Defendants[3] unreasonably asserted certain facts were undisputed in their motion for summary judgment.  Plaintiffs request that Defendants' counsel be ordered to pay Plaintiffs' attorney fees incurred in responding to the motion for summary judgment.  Defendants oppose the motion for sanctions and request an award of attorney fees and costs incurred in defending against it.[4]

---

[1] (Mot. for Rule 11 Sanctions ("Mot."), Doc. No. 174.)

[2] Fed. R. Civ. P. 11.

[3] The Daggett County Defendants are Daggett County, Erik Bailey, and Jerry Jorgensen. Because the other defendants were dismissed or defaulted before the events relevant to this motion, the Daggett County Defendants are referred to simply as "Defendants" throughout this order.

[4] (Daggett County Defs.' Opp'n to Mot. for Rule 11 Sanctions ("Opp'n"), Doc. No. 180.)

Plaintiffs' motion for sanctions is denied.  As explained below, Plaintiffs have not shown any of the challenged factual assertions violated Rule 11.  Defendants supported their factual assertions with citations to record evidence, and Plaintiffs have not demonstrated any of the challenged assertions were objectively unreasonable.  Accordingly, there is no basis to find any Rule 11 violation by Defendants' counsel.  Further, Plaintiffs' Rule 11 motion appears to be an improper attempt to re-raise factual disputes which Plaintiffs had ample opportunity to litigate on summary judgment.

Because the motion for sanctions lacks merit and appears to have unreasonably and vexatiously multiplied the proceedings in this case, Plaintiffs' counsel are ORDERED to show cause why they should not be required to pay Defendants' attorney fees and costs incurred in defending against the motion, pursuant to 28 U.S.C. § 1927.  Plaintiffs' counsel must file a response within fourteen days.

## BACKGROUND

Plaintiffs are former prisoners at Daggett County Jail.  As relevant here, Plaintiffs claim misconduct by jail officers, including that a jail deputy, Joshua Cox, tased them without provocation.[5]  They brought claims under the Eighth Amendment of the United States Constitution and Article 1, Section 9 of the Utah Constitution against Daggett County, Erik Bailey in his official capacity as the current sheriff, and Jerry Jorgensen in his personal capacity as the former sheriff.  These defendants moved for summary judgment on August 20, 2021.[6]

---

[5] (Am. Compl. ¶¶ 51–60, 103–07, Doc. No. 3; Asay Compl. ¶¶ 64–66, Doc. No. 2, Case No. 2:18-cv-422; Olsen Am. Compl. ¶ 39, Doc. No. 14, Case No. 2:19-cv-188.)

[6] (Daggett County Defs.' Mot. for Summ. J. ("MSJ"), Doc. No. 126.)  At the time the motion for summary judgment was filed, all other defendants had been dismissed or defaulted.

The court ruled on the motion on February 16, 2022, granting summary judgment in favor of Defendants on the state-law claims, the claims against Sheriff Bailey, the claims against Sheriff Jorgensen, and the failure-to-train claims against Daggett County.[7] The court denied Defendants' motion for summary judgment as to Plaintiffs' Eighth Amendment claim against Daggett County based on Sheriff Jorgensen's failure to supervise and discipline.[8]

Plaintiffs filed the instant motion for sanctions on June 16, 2022, four months after the court's summary judgment ruling.[9]

## LEGAL STANDARDS

Rule 11 of the Federal Rules of Civil Procedure provides that, by presenting a motion to the court, an attorney certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[10] A court may impose sanctions for violations of this rule "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[11]

---

[7] (Mem. Decision and Order Granting in Part and Den. in Part Defs.' Mot. for Summ. J. 31, Doc. No. 164.)

[8] (*Id.*)

[9] (Mot., Doc. No. 174.)  Defendants argue Plaintiffs' motion for sanctions was untimely.  (Opp'n 4–5, Doc. No. 180.)  Because the motion is denied on the merits, the court need not address this issue.

[10] Fed. R. Civ. P. 11(b)(3).

[11] Fed. R. Civ. P. 11(c)(4).

Because Plaintiffs allege Rule 11 violations in connection with a motion for summary judgment, Rule 56 is also relevant here. Rule 56 requires a party asserting a fact is undisputed to support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[12]

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts."[13] An attorney's conduct is assessed "under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'"[14] Rule 11 imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing."[15] However, "[b]ecause our adversary system expects lawyers to zealously represent their clients, [the Rule 11] standard is a tough one to satisfy; an attorney can be rather aggressive and still be

---

[12] Fed. R. Civ. P. 56(c)(1).

[13] *Collins v. Daniels*, 916 F.3d 1302, 1322 (10th Cir. 2019) (second alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

[14] *Id.* (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)).

[15] *Id.* (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)).

reasonable."[16]  "[I]n determining if sanctions are appropriate, any doubts must be resolved in favor of the party signing the pleading."[17]

## ANALYSIS

Plaintiffs argue Rule 11 sanctions are warranted based on the factual assertions in paragraphs 9, 15, 17, and 37 of the "Statement of Undisputed Material Facts" in Defendants' summary judgment motion.[18]  Plaintiffs contend no reasonable attorney would have asserted these facts were undisputed.  The court addresses each fact in turn.

A. Paragraph 9

In paragraph 9, Defendants asserted the following facts were undisputed:

All corrections officers had to be POST certified before they could work in the Jail as a corrections officer.  The Jail also had control room officers, who stayed in a locked control room during their shifts, who did not need to be certified.  However, *all jail staff went through a mandatory FTO training which consisted of being assigned to an FTO (i.e., Field Training Officer) to help the new officer to learn the Jail policies and practices and how to treat and properly supervise Jail inmates.* The FTO had to "sign off" and attest that the new officer knew the policies and was ready to work alone as a Corrections Officer.  In addition, all the new officers had to sign a paper stating that they had read and understood all the Jail policies and practices.[19]

Defendants cited a supporting declaration from Sheriff Jorgensen, which contains a statement identical to this paragraph.[20]

---

[16] *Id.* (second alteration in original) (quoting *Predator Int'l, Inc.*, 793 F.3d at 1182).

[17] *Moradian v. Deer Valley Resort Co.*, No. 2:10-cv-00615, 2012 U.S. Dist. LEXIS 116075, at *27 (D. Utah Aug. 16, 2012) (unpublished) (quoting *Edwards v. Hare*, 682 F.Supp. 1528, 1535 (D. Utah 1988)).

[18] (*See* Mot. 4–13, Doc. No. 174.)

[19] (MSJ ¶ 9, Doc. No. 126 (emphasis added).)

[20] (*Id.* (citing Decl. of Jerry Jorgensen in Support of MSJ ("Jorgensen Decl.") ¶ 14, Doc. No. 127).)

Plaintiffs argue no reasonable attorney would have asserted it was undisputed that "all jail staff went through a mandatory FTO training," or that trainers and new officers had to sign statements regarding the training.[21]  Plaintiffs point to Mr. Cox's deposition testimony that he received no formal training and that he believed the jail had no procedures manual.[22]  Plaintiffs also assert there is "no proof that Mr. Cox or any of his contemporar[ies]" signed statements indicating they read and understood jail policies and practices.[23]  Plaintiffs argue it was unreasonable for Defendants' counsel to rely solely on Sheriff Jorgensen's "unverified belief" to support the factual assertions in paragraph 9.[24]

Plaintiff has not demonstrated any Rule 11 violation related to paragraph 9.  Defendants' factual assertions in this paragraph were properly supported by citation to evidence in the record—namely, Sheriff Jorgensen's declaration.  Further, Defendants' reliance on this declaration was not unreasonable in light of other record evidence.  In their opposition to the Rule 11 motion, Defendants point out that numerous other jail staff testified in depositions that mandatory FTO training was conducted,[25] consistent with what Sheriff Jorgensen described.  And Defendants note that Sheriff Jorgensen's declaration was also consistent with his own

---

[21] (Mot. 4–7, Doc. No. 174.)

[22] (*See id.* at 4; Ex. 6 to Pls.' Opp'n to MSJ, Dep. of Joshua Cox ("Cox Dep.") 9:18–22, Doc. No. 141-7.)

[23] (Mot. 6, Doc. No. 174.)

[24] (*Id.* at 5.)

[25] (*See* Opp'n 9–10, Doc. No. 180 (citing Ex. 9 to Pls.' Opp'n to MSJ, Dep. of Adam Gonzalez 8:8–10, Doc. No. 141-10; Ex. 1 to Pls.' Opp'n to MSJ, Dep. of Holly Jo Dick 44:8–14, Doc. No. 141-2; Ex. 3 to Pls.' Opp'n to MSJ, Dep. of Benjamin Lail 31:6–32:13, Doc. No. 141-4; Ex. 5 to Pls.' Opp'n to MSJ, Dep. of Rodrigo Toledo Vol. II 8:8–19; 19:22–20:10, Doc. No. 141-6; Ex. 7 to Pls.' Opp'n to MSJ, Dep. of Travis Dupaix 9:18–10:2, 11:1–4, 53:21–23, Doc. No. 141-8).)

deposition testimony and Daggett County's Rule 30(b)(6) deposition testimony.[26]  On this record, the assertion that paragraph 9 was undisputed was not objectively unreasonable.

The fact that Plaintiffs identified some contrary evidence in their opposition to Defendants' summary judgment motion does not demonstrate a violation of Rule 11.  Plaintiffs were certainly entitled to counter Defendants' assertions of undisputed fact by pointing to contrary evidence in the record, such as Mr. Cox's testimony that he did not receive formal training.  But the existence of some contrary evidence does not mean Defendants violated Rule 11 by asserting these facts were undisputed.  If this were the case, Rule 11 would be implicated virtually any time a court denied a summary judgment motion based on the existence of triable disputes of material fact.  The purpose of Rule 11 is to deter "baseless filings"[27]; it is "not the proper mechanism for resolving factual disputes."[28]  As described above, Defendants properly supported paragraph 9 with a citation to Sheriff Jorgensen's declaration, and they have identified additional evidence in the record supporting Sheriff Jorgensen's statements.  Under these circumstances, Defendants' assertion that paragraph 9 was undisputed was not baseless or unreasonable.  To the extent Plaintiffs dispute paragraph 9, they had ample opportunity to raise this dispute in their opposition to the summary judgment motion—which they did.[29]  But there is

---

[26] (*See id.* at 7 (citing Ex. 4 to Pls.' Opp'n to MSJ, Dep. of Jerry Jorgensen ("Jorgensen Dep.") 78:14–17, Doc. No. 141-5; Ex. 10 to Pls.' Opp'n to MSJ, Daggett County 30(b)(6) Dep. 63:20–25, 117:13–17, 118:9–12, Doc. No. 141-11).)

[27] *Collins*, 916 F.3d at 1322.

[28] *Tso v. Murray*, No. 16-cv-02480-WJM-STV, 2018 U.S. Dist. LEXIS 17036, at *6 (D. Colo. Feb. 1, 2018) (unpublished).

[29] (*See* Pls.' Opp'n to MSJ 8–11, Doc. No. 138.)

no basis to find Defendants' counsel violated Rule 11 by including paragraph 9 in the statement
of undisputed facts.

B.  Paragraph 15

Paragraph 15 of Defendants' statement of undisputed facts stated, in relevant part:
"Although there was one incident where Ben Lail dry-fired a TASER in the presence of a Jail
teacher, he was reprimanded for the action by his supervisor, Chris Collett, and told to apologize
to the teacher."[30]  Defendants cited Sheriff Jorgensen's supporting declaration, which contains an
identical statement.[31]

Plaintiffs take issue with the assertion that Mr. Lail was "reprimanded," pointing to Mr.
Collett's testimony (as a Rule 30(b)(6) witness for Daggett County) that he did not issue a
"written reprimand" for the incident, but merely a "supervisor's note."[32]  In response,
Defendants note paragraph 15 did not specify whether the reprimand was written or verbal, and
they contend other evidence shows Mr. Collett *verbally* reprimanded Mr. Lail, and that Sheriff
Jorgensen told him to apologize—consistent with the factual assertions in paragraph 15.[33]
Specifically, Defendants cite Mr. Collett's "supervisor's note" stating he "admonished" Mr.

---

[30] (MSJ ¶ 15, Doc. No. 126.)

[31] (*Id.* (citing Jorgensen Decl. ¶ 20, Doc. No. 127).)

[32] (Mot. 7, Doc. No. 174 (citing Ex. 10 to Pls.' Opp'n to MSJ, Daggett County 30(b)(6) Dep.
89:15–90:6, Doc. No. 141-11).)

[33] (Opp'n 10–11, Doc. No. 180.)

Lail,[34] and Sheriff Jorgensen's testimony that he "told Lail that that was unacceptable" and "asked him to apologize."[35]

Plaintiffs' argument regarding paragraph 15 amounts to a semantic dispute over the meaning of the word "reprimanded"—not a Rule 11 violation. Paragraph 15 did not specify the type of reprimand, and it was properly supported by a citation to Sheriff Jorgensen's declaration. Further, Defendants have identified additional evidence that Mr. Lail was verbally reprimanded, which is consistent with the factual assertion in paragraph 15 (and Sheriff Jorgensen's declaration). On this record, it was not objectively unreasonable for Defendants to assert, in their statement of undisputed facts, that Mr. Lail was reprimanded. To the extent Plaintiffs contend the term "reprimanded" was inaccurate, they had ample opportunity to dispute paragraph 15 in their opposition to the summary judgment motion—which they did.[36] But there is no basis to find the use of the word "reprimanded" violated Rule 11. Plaintiffs' contention that Defendants' counsel violated Rule 11 in connection with paragraph 15 is baseless.

C.  Paragraphs 17 and 37

Finally, Plaintiffs challenge related factual assertions in paragraphs 17 and 37 of Defendants' statement of undisputed facts. Paragraph 17 stated:

> It never would have crossed Jorgensen's mind that a Daggett County deputy, like Joshua Cox, would intentionally "tase" inmates. It is illegal to "tase" a prisoner when force is not required and, as a law enforcement officer, who had sworn an oath with POST to uphold the laws of Utah, it was obviously illegal what Joshua Cox did in "tasing" inmates. *He was put on administrative leave when the*

---

[34] (Ex. 26 to Pls.' Opp'n to MSJ, Supervisors Notes, Doc. No. 138-11.)

[35] (Ex. 4 to Pls.' Opp'n to MSJ, Jorgensen Dep. 33:5–6, Doc. No. 141-5.)

[36] (*See* Pls.' Opp'n to MSJ 16–19, Doc. No. 138.)

*allegations were first made*, and he was terminated from the Sheriff's Office when the investigation was complete with respect to him.[37]

Defendants cited Sheriff Jorgensen's declaration, which contains a substantially identical statement.[38]

> Paragraph 37 stated:
>
> In 2017, Collett confronted Mr. Cox regarding his involvement in tasing inmates. *Collett agreed with Sheriff Jorgensen to place Mr. Cox on administrative leave immediately.* At once Collett stripped Cox of his badge, his gun, and his patrol vehicle. As the allegations were substantiated during the investigation, action was taken right away to terminate his employment. Collett took away the rest of his equipment and personally wrote the necessary letter of termination to Mr. Cox.[39]

Defendants cited Mr. Collett's supporting declaration, which contains a substantially identical statement.[40]

Plaintiffs first take issue with the assertions in these paragraphs that Mr. Cox was placed on administrative leave "when the allegations were first made" or "immediately."[41] Plaintiffs assert Mr. Cox was placed on administrative leave weeks after Sheriff Jorgensen first received a letter from Plaintiff Steven Drollette alleging Mr. Cox had tased inmates.[42] Plaintiffs note that Defendants acknowledged this timeline in their reply supporting the summary judgment

---

[37] (MSJ ¶ 17, Doc. No. 126 (emphasis added).)

[38] (*Id.* (citing Jorgensen Decl. ¶ 22, Doc. No. 127).)

[39] (*Id.* ¶ 37 (emphasis added).)

[40] (*Id.* (citing Decl. of Chris Collett in Support of MSJ ("Collett Decl.") ¶ 29, Doc. No. 128).)

[41] (*See* Mot. 8–12, Doc. No. 174.)

[42] (*See id.* at 8; *see also* Pls.' Opp'n to MSJ 21, Doc. No. 138.)

motion.[43]  Plaintiffs argue no reasonable attorney would have asserted it was undisputed that Mr.

Cox was placed on leave immediately after Sheriff Jorgensen saw Mr. Drollette's letter.[44]

Plaintiffs have not demonstrated the assertions in paragraphs 15 and 37 regarding the

timing of Mr. Cox being placed on leave violated Rule 11.  As an initial matter, neither

paragraph references Mr. Drollette's letter or asserts Mr. Cox was placed on leave immediately

after this letter was received.  Paragraph 37 states Mr. Collette "confronted" Mr. Cox "[i]n 2017"

and that Mr. Cox was then placed on leave "immediately."[45]  It does not address how this timing

related to the receipt of Mr. Drollette's letter.  Likewise, paragraph 17 stated Mr. Cox was placed

on leave "when the allegations were first made," without specifying a precise timeline.[46]  The

parties appear to agree Mr. Cox was placed on leave on February 1, 2017—during the UDC

investigation and a few weeks after Sheriff Jorgensen received Mr. Drollette's letter.[47]  To the

extent Plaintiffs dispute that the phrase "when the allegations were first made" accurately

characterized this timeline, Plaintiffs had ample opportunity to raise this dispute on summary

judgment—which they did.[48]  The assertions in paragraphs 17 and 37 are properly supported

with citations to the declarations of Sheriff Jorgensen and Mr. Collette, and Plaintiffs fail to

show Defendants' characterization of the timing violated Rule 11.

---

[43] (Mot. 8–9, Doc. No. 174 (citing Defs.' Reply in Support of MSJ 5, 7, Doc. No. 152).)

[44] (*Id.* at 8, 10–11.)

[45] (MSJ ¶ 37, Doc. No. 126.)

[46] (*Id.* ¶ 17.)

[47] (*See* Mot. 8–9, Doc. No. 174; Opp'n 12–14, Doc. No. 180.)

[48] (*See* Pls.' Opp'n to MSJ 21, Doc. No. 138.)

Plaintiffs also take issue with the suggestion in paragraph 37 that Sheriff Jorgensen was involved in placing Mr. Cox on administrative leave.[49]  Plaintiffs argue no reasonable attorney would have asserted this was undisputed because the evidence showed there was a "significant dispute" about whether Sheriff Jorgensen was involved.[50]  Plaintiffs point to a Utah Department of Corrections ("UDC") investigative report, which stated ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████.[51]

The evidence cited by Plaintiffs does not demonstrate the assertions in paragraph 37 violated Rule 11.  Paragraph 37 was directly supported by Mr. Collett's declaration, in which Mr. Collett stated he "agreed with Sheriff Jorgensen to place Mr. Cox on leave."[52]  The UDC report does not expressly address, one way or the other, whether Sheriff Jorgensen was involved in this decision, while Mr. Collett testified Sheriff Jorgensen *was* involved.  On this record, it was not objectively unreasonable for Defendants to assert paragraph 37 as an undisputed fact.

---

[49] (Mot. 9–11, Doc. No. 174.)

[50] (*Id.*)

[51] (*See id.* at 9 (citing Ex. 32 to Pls.' Opp'n to MSJ, UDC Investigative Report, Doc. No. 141-33 at 4, 8.)  Plaintiffs paraphrase the UDC report as stating ███████████████████ ██████████████████ (*id.* at 9), but this is not what the report says.  Rather, the report states as follows: ████████████████████████████████████████████████████ ████████████████████ (Ex. 32 to Pls.' Opp'n to MSJ, UDC Investigative Report, Doc. No. 141-33 at 8 (emphasis added).)  The report does not state who made the decision to place Mr. Cox on administrative leave.

[52] (Collett Decl. ¶ 29, Doc. No. 128.)

Plaintiffs were certainly entitled to dispute it in their opposition, but there is no basis to find a Rule 11 violation.

Plaintiffs argue in their reply that "[a] reasonable attorney would have provided more context to clearly explain the timeline in asserting undisputed facts if the intent was to give a clear, as opposed to muddled, picture of who made what decision when."[53]  But the purpose of Rule 11 is to deter "baseless" filings[54]—not filings which are slightly muddled.  A Rule 11 motion is not an appropriate vehicle to nitpick the clarity of Defendants' factual assertions or argue they lacked sufficient context.  These issues belong in summary judgment briefing; they are not a valid basis to accuse opposing counsel of violating Rule 11.  Plaintiffs fail to show any Rule 11 violation related to paragraphs 17 or 37.

* * *

In sum, Plaintiffs fail to demonstrate any of the challenged factual assertions in Defendants' summary judgment motion violated Rule 11, much less that sanctions are warranted. Indeed, Plaintiffs have not identified any conduct by Defendants' counsel approaching the standard for a Rule 11 violation.  Plaintiffs, instead, merely attempt to re-raise factual disputes— four months after the court's ruling—which they had ample opportunity to litigate on summary judgment.  Their pursuit of Rule 11 sanctions based on these factual disputes is meritless.

Defendants ask the court to order Plaintiffs to pay their attorney fees and costs for defending against the Rule 11 motion under 28 U.S.C. § 1927.[55]  This statute provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously

---

[53] (Reply 11, Doc. No. 183.)

[54] *Collins*, 916 F.3d at 1322.

[55] (Opp'n 14, Doc. No. 180.)

may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[56]  Because the Rule 11 motion appears, on its face, to meet this standard, Plaintiffs' counsel are ordered to show cause why they should not be required to pay Defendants' attorney fees and costs pursuant to this statute.

## CONCLUSION

Plaintiffs' motion for sanctions is denied.  Plaintiffs' counsel are ORDERED to show cause why they should not be required to pay Defendants' attorney fees and costs incurred in defending against the motion, pursuant to 28 U.S.C. § 1927.  Plaintiffs' counsel must file a response within fourteen days.

DATED this 30th day of December, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[56] 28 U.S.C. § 1927.

14