THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DUSTIN LAW PORTER, STEVEN DROLLETTE, JOSHUA ASAY, and JOSHUA OLSEN,<br><br>Plaintiffs,<br><br>v.<br><br>DAGGETT COUNTY; ERIK BAILEY, in his official capacity; JERRY JORGENSEN; JOSHUA COX; and RODRIGO TOLEDO,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [225] DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO EXCLUDE SHERIFF JORGENSEN'S WITHDRAWN PLEA FROM EVIDENCE**<br><br>Case Nos.   2:18-cv-00389 (Consolidated)<br>                  2:18-cv-00422<br>                  2:19-cv-00188<br><br>District Judge David Barlow |

Before the court is Defendant Daggett County's Second Motion for Summary Judgment or in the Alternative to Exclude Sheriff Jorgensen's Withdrawn Plea from Evidence.[1] Daggett County moves the court to re-examine its Memorandum Decision and Order[2] denying summary judgment on the question of whether Daggett County is liable for Jerry Jorgensen's ("Sheriff Jorgensen") alleged failure to supervise and discipline jail staff. Alternatively, Daggett County moves the court to exclude from trial reference to Sheriff Jorgensen's withdrawn state-court guilty plea. Opposing the motion are Plaintiffs Dustin Law Porter, Steven Drollette, Joshua Asay, and Joshua Olsen (collectively "Plaintiffs").[3] For the reasons below, the court denies Daggett County's motion.[4]

---

[1] Second Mot. Summ. J., ECF No. 225, filed June 30, 2023.
[2] Mem. Decision & Order Granting in Part & Denying in Part Defs.' Mot. for Summ. J. ("Summ. J. Order"), ECF No. 164, filed Feb. 24, 2022.
[3] *See* Pls.' Opp'n to Defs.' Second Mot. for Summ. J. ("Opp'n"), ECF No. 232, filed Aug. 11, 2023.
[4] Having reviewed the filings and relevant law, the court decides the matter on the briefing. *See* DUCivR 7-1(g).

1

## BACKGROUND[5]

Plaintiffs are four individuals formerly incarcerated at Daggett County Jail (the "Jail").[6] From 2011 to 2017, Sheriff Jorgensen served as Daggett County Sheriff.[7] He also served as the Jail's commander before appointing Benjamin Lail ("Commander Lail") to the position in late 2014.[8] All four plaintiffs allege that a Jail deputy, Joshua Cox ("Deputy Cox"), violated their right to be free from cruel and unusual punishment when he tased them in 2016.[9] In a consolidated 42 U.S.C. § 1983 action, Plaintiffs sued Daggett County and Jail officials for alleged violations of the Eighth Amendment and the Utah Constitution.[10] Between January 2019 and July 2020, six of the eight defendants defaulted, settled, or had their claims dismissed.[11]

On September 6, 2017, Sheriff Jorgensen entered a guilty plea in Utah state court[12] to one count of Official Misconduct.[13] He admitted he "knowingly refrain[ed] from performing a duty imposed on [him] by law or clearly inherent in the nature of [his] office as Daggett County Sheriff."[14] The accompanying probable cause statement reflected that Sheriff Jorgensen "failed

---

[5] The court incorporates by reference the background facts from its prior decision. Summ. J. Order 1–7.
[6] Am. Compl. ¶ 1, ECF No. 3, filed June 7, 2018; Asay Complaint ¶ 1, ECF No. 2, No. 2:18-cv-00422 (D. Utah filed May 30, 2018); Olsen Am. Compl. ¶ 1, ECF No. 14, No. 2:19-cv-00188 (D. Utah filed June 4, 2019). The court consolidated the cases on March 1, 2021. *See* ECF No. 113.
[7] Dep. of Jerry Jorgensen ("Jorgensen Dep.") 6:24–7:1, 10:15–19, ECF No. 141-5.
[8] *Id.* at 10:15–19, 31:25–32:4.
[9] Am. Compl. ¶¶ 51–60; Asay Compl. ¶¶ 64–66; Olsen Am. Compl. ¶ 39. Deputy Cox tased five inmates at a jail barbeque in August 2016. Dep. of Joshua Cox ("Cox Dep.") 78:12–79:17, ECF No. 141-7. In October 2016, Deputy Cox similarly tased another inmate as an "initiation" to work crew. ECF No. 141-30, at 4.
[10] Am. Compl. ¶¶ 75–120; Asay Compl. ¶¶ 119–64; Olsen Am. Compl. ¶¶ 136–85.
[11] *See* ECF No. 43, filed Jan. 25, 2019 (dismissing claims against Defendant Logan Walker); ECF No. 46, filed Feb. 4, 2019 (entering default for Defendant Joshua Cox); ECF No. 64, filed July 5, 2019 (dismissing claims against Defendants Jeffrey Toone and Mike Haddon); ECF No. 81, filed Nov. 13, 2019 (dismissing claims against Defendant Benjamin Lail); ECF No. 94, filed July 16, 2020 (entering default for Defendant Rodrigo Toledo).
[12] Plea in Abeyance, ECF No. 22, No. 171500209 (Utah 3d Dist. Ct. filed May 5, 2017).
[13] Utah Code Ann. § 76-8-201 (West 2023) ("A public servant is guilty of a class B misdemeanor if, with an intent to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office, or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office.").
[14] Plea in Abeyance 2.

to investigate, discipline, or otherwise supervise deputies under his control, and failed to investigate criminal conduct that occurred at [the] Jail."[15] Utah prosecutors asked the court to hold the plea in abeyance for six months and upon Sheriff Jorgensen's successful completion of certain requirements, Utah prosecutors would move to dismiss with prejudice all state charges.[16] On March 8, 2018, the state court closed the case after the six-month period.[17] The docket reflected that the Official Misconduct charge had been dismissed with prejudice as of September 6, 2017.[18] Sheriff Jorgensen and state prosecutors filed a stipulated motion on January 30, 2023 to clarify that the guilty plea was withdrawn.[19] The state court granted the motion the next day.[20]

Daggett County, Sheriff Jorgensen, and Daggett County's current sheriff moved for summary judgment on August 20, 2021.[21] The court awarded summary judgment to the defendants on Plaintiffs' Eighth Amendment failure-to-train claim and state-law claims.[22] The court denied summary judgment to Daggett County on Plaintiffs' failure-to-supervise-and-discipline claim.[23]

On June 30, 2023, Daggett County filed its Second Motion for Summary Judgment.[24] Plaintiffs filed their Opposition on August 11.[25] Daggett County replied on September 6.[26] Two

---

[15] *Id.*
[16] *Id.* at 6.
[17] *See* ECF No. 225-1.
[18] *See id.*
[19] ECF No. 225-2, at 2, ¶ 6 ("Defendant seeks a *clarifying order* stating that his guilty plea 'held in abeyance' in this criminal case was necessarily withdrawn in order for the Court to dismiss the case. . . . [A]ll parties agree that the record should be corrected to reflect said guilty plea was withdrawn." (emphasis added)).
[20] ECF No. 232-4.
[21] Mot. for Summ. J., ECF No. 126.
[22] Summ. J. Order 31.
[23] *Id.*
[24] *See* Second Mot. Summ. J. Defendant did not seek leave to file a second dispositive motion and the time for filing dispositive motions had long expired. *See* ECF No. 125 (dispositive motions due by October 1, 2021).
[25] *See* Opp'n.
[26] Reply in Support of 2nd Mot. for Summ. J. ("Reply"), ECF No. 247.

days later, Plaintiffs moved for leave to file a surreply.[27] They argue Daggett County exceeded the reply's scope by offering new facts, arguments, and case law.[28] The court denies as moot Plaintiffs' motion because the court does not rely on any new material from the reply brief in deciding the matter.[29]

## STANDARD

Though not titled as such, Daggett County's filing is substantively a motion for reconsideration.[30] While "[t]he Federal Rules of Civil Procedure do not recognize a 'motion for reconsideration[,]' . . . such motions are [not] prohibited."[31] Under Rule 54(b), the court has discretion to revise "any order . . . that adjudicates fewer than all the claims . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[32] The Rule "allows for revision of an interlocutory order before entry of final

---

[27] ECF No. 248.
[28] *Id.* at 3.
[29] *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006); *see Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) ("If the district court does not rely on the new material in reaching its decision, however, 'it does not abuse its discretion by precluding a surreply.'" (citation omitted)). Besides, "as a general rule, a party is prohibited from raising new arguments in a reply brief." *Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1232 (D. Kan. 2008) (citing *United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996)). "[T]o allow [a movant] to raise new arguments [in reply] would be "manifestly unfair to the [nonmovant]" and "unfair to the court itself[.]" *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (citation omitted).
[30] Daggett County titles its motion "Second Motion for Summary Judgment." Second Mot. Summ. J. 1. Yet it asks "the [c]ourt to re-examine the facts as they apply to more recent case law[,]" to "examine and modify [its] previous summary judgment order[,]" and urges the court to "find that there [are] now adequate bases to dismiss [the] failure to supervise claim." *Id.* at 1–2. For this reason, the court treats the motion as one for reconsideration. *See, e.g.*, *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) ("The . . . [c]ourt's partial summary judgment ruling was not a final judgment. Thus, [the] motion for reconsideration is considered 'an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'" (citation omitted)). The court therefore need not resolve the parties' arguments as to whether Daggett County can satisfy the standard under Rule 16(b)(4) or Rule 15(a) of the Federal Rules of Civil Procedure, *see* Opp'n 9–14; Reply 7–10, or Plaintiffs' discussion about accepting new expert testimony, *see* Opp'n 25–26, 32.
[31] *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1023 (10th Cir. 2018), *as revised* (Apr. 13, 2018).
[32] Fed. R. Civ. P. 54(b); *see Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983))).

judgment."[33] "[D]enial of summary judgment is an interlocutory order[.]"[34] The court "'is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b),' which govern a district court's reconsideration of its final judgments."[35] "The [c]ourt analyzes motions to reconsider by picking up where it left off in the prior ruling—not by starting anew."[36]

## DISCUSSION

The court previously concluded a reasonable jury could find Daggett County liable under a theory of municipal liability for Sheriff Jorgensen's failure to supervise and discipline Jail staff.[37] Daggett County moves the court to reconsider primarily for three reasons. First, it argues Sheriff Jorgensen's withdrawn guilty plea is inadmissible and the court must re-examine its reasoning. Next, it contends the court applied the wrong standard for deliberate indifference. Last, it argues the court erred in finding a defective policy or custom. The court first addresses the withdrawn plea.

---

[33] *Luo v. Wang*, 71 F.4th 1289, 1297 (10th Cir. 2023) (citation omitted); *see Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." (quoting *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007))).
[34] *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1241 (10th Cir. 2023) (quoting *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010)).
[35] *Spring Creek*, 887 F.3d at 1024 (quoting *Fye*, 516 F.3d at 1223 n.2); *see Luo*, 71 F.4th at 1299 ("[T]he district court d[oes] not have to apply the *Servants of the Paraclete* principles to its reconsideration [of an interlocutory order]."). The court thus need not determine that there is "intervening authority, new facts, or manifest injustice resulting from the previous ruling" before reconsidering an interlocutory order. *Rimbert*, 647 F.3d at 1252. But it may consider these factors generally. *See, e.g.*, *Martinez v. Dart Trans, Inc.*, 547 F. Supp. 3d 1153, 1171 (D.N.M. 2021) (reasoning that a court "should be more inclined to grant motions for reconsideration if the movant presents" new controlling authority, new evidence, or a clear indication that the court erred).
[36] *Chandhok v. Companion Life Ins. Co.*, 555 F. Supp. 3d 1092, 1119 (D.N.M. 2021); *accord SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1221 (N.D. Okla. 2017).
[37] Summ. J. Order 28.

### I. The Court Need Not Consider Whether the Withdrawn Guilty Plea Is Admissible.

Daggett County contends the court cannot consider Sheriff Jorgensen's withdrawn guilty plea pursuant to Rule 410 of the Federal Rules of Evidence.[38] Without evidence of the plea, Daggett County argues, the court must conclude no reasonable jury could find for Plaintiffs on the failure-to-supervise-and-discipline issue. For their part, Plaintiffs contend Daggett County waived its arguments or, alternatively, that the guilty plea is admissible.

The court need not determine whether Sheriff Jorgensen's withdrawn plea is admissible.[39] Assuming without deciding that evidence of the plea is inadmissible, Daggett County still fails to show why the court should reconsider its decision and grant Daggett County summary judgment.

### II. Daggett County Does Not Persuade the Court It Should Reconsider Its Decision Even If Sheriff Jorgensen's Withdrawn Guilty Plea Is Inadmissible.

To establish municipal liability for an official's failure to supervise and discipline, a plaintiff must show (1) "a municipal policy or custom," (2) "a direct causal link between the policy or custom and the injury alleged[,]" and (3) that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[40] Daggett County asserts the court must reconsider all three prongs. The court addresses each element in order.

---

[38] "In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions: (1) a guilty plea that was later withdrawn." Fed. R. Evid. 410(a).
[39] To the extent Daggett County moves in limine to exclude at trial reference to the withdrawn guilty plea, the parties may file such motions at the appropriate time in advance of trial. *See* ECF No. 250 (trial deadlines). Thus, the court does not address the parties' arguments about admissibility. *See* Second Mot. Summ. J. 5–8; Opp'n 18–22.
[40] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citations omitted).

### A. A Reasonable Jury Could Find the Official Policy or Custom Element Satisfied.

The court previously found that the existence of an official policy or custom was undisputed.[41] Noting Plaintiffs alleged a "failure to adequately train or supervise employees,"[42] the court reasoned Plaintiffs could show a policy or custom "so long as that failure results from deliberate indifference to the injuries that may be caused."[43]

Daggett County contends the court erred in finding a defective policy or custom. Its argument goes like this. To show a defective policy or custom, a plaintiff must show that an official municipal policy is unconstitutional—a "mere 'failure to supervise or discipline' is not by itself a policy . . . absent some sort of policy that applies to all similar situations and has the force of law."[44] A plaintiff must also show that a "final policymaker" enacted the official policy or custom.[45] In Daggett County's view, Plaintiffs thus need to allege "a formal policy that stated it was County policy to unconstitutionally abuse inmates or to use excessive force on inmates."[46] But here, Plaintiffs purportedly failed to do so. They did not allege that a defective pattern or practice existed, that Sheriff Jorgensen promulgated such a policy, or that he ratified his subordinates' unconstitutional conduct.[47] In essence, Daggett County asserts Plaintiffs "cannot show the existence of a constitutionally defective policy or custom" given "Supreme Court

---

[41] Summ. J. Order 21.
[42] *Id.*
[43] *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).
[44] Second Mot. Summ. J. 16 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988)).
[45] *Id.* at 17–18.
[46] *Id.* at 18.
[47] *Id.* at 18–20.

7

precedent."[48] Plaintiffs respond that Daggett County mischaracterizes the court's decision and ignores binding precedent.[49]

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[50] "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[51] "[T]o establish municipal liability, a plaintiff must first demonstrate a 'municipal policy or custom[.]'"[52] It may exist as:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; ***or*** (5) *the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused*.[53]

Here, Plaintiffs allege the fifth example.[54] Daggett County's arguments are unavailing. Further, the question is not, as Daggett County suggests, whether it had a "formal policy . . . to unconstitutionally abuse inmates or to use excessive force on inmates[,]"[55] but rather whether "a

---

[48] *Id.* at 20.
[49] Opp'n 30–32.
[50] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).
[51] *Schneider*, 717 F.3d at 770 (quoting *Pembaur*, 475 U.S. at 479).
[52] *Waller*, 932 F.3d at 1283.
[53] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (emphasis added) (quoting *Crowson v. Washington County*, 983 F.3d 1166, 1184 (10th Cir. 2020)); *see Schneider*, 717 F.3d at 770 ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.").
[54] Summ. J. Order 16; *see* Pls.' Opp'n to Defs. Mot. for Summ. J. 63–65, ECF No. 141, filed Oct. 15, 2021.
[55] Second Mot. Summ. J. 18.

reasonable jury could find that there was an official policy or custom of failing to supervise and discipline Daggett County deputies [and] that the policy was the moving force behind the assaults Plaintiffs suffered."[56] And Plaintiffs need not show ratification of subordinates' decisions;[57] it is enough to show a policy of failing to supervise that resulted from deliberate indifference.[58] In effect, Daggett County argues the court should have applied a different standard than the one the law requires.[59]

### B. Reasonable Jurors Could Find the Causation Prong Satisfied Even Without Knowing Sheriff Jorgensen Pleaded Guilty to Official Misconduct.

The causation prong on a failure-to-supervise claim requires that a plaintiff demonstrate the defendant "caused the constitutional violation."[60] A plaintiff must "establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'"[61] "[T]hrough its *deliberate* conduct, the municipality [must be] the

---

[56] Summ. J. Order 28.
[57] Second Mot. Summ. J. 19–20 ("There are no allegations that the Sheriff ratified any subordinates' unconstitutional conduct before the incident.").
[58] The Tenth Circuit has stated deliberate indifference "may be found absent a pattern of unconstitutional behavior[,]" *Waller*, 932 F.3d at 1284 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)), and a policy or custom "may take *one* of the following [five] forms[,]" including a failure to supervise or discipline, *id.* at 1283 (emphasis added). Plaintiffs need not prove a policy or custom in multiple ways as Daggett County suggests.
[59] *See supra* notes 50–58. What is more, Daggett County could have raised these arguments earlier. Reconsideration is not the appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see Gale v. Uintah County*, No. 2:13-cv-00725, 2021 WL 4553218, at *3 (D. Utah Oct. 5, 2021) ("[M]otions for reconsideration should be denied when movants use them as vehicles to advance arguments made earlier in the litigation."). It "is not 'a license for a losing party's attorney to get a "second bite at the apple."'" *Showmaker v. Taos Ski Valley*, No. 1:20-cv-00447, 2021 WL 5937592, at *1 (D.N.M. Dec. 16, 2021) (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1998)); *see Pippin*, 440 F.3d at 1199 ("[I]t is not our usual practice to give litigants the proverbial second bite at the apple.").
[60] *Schneider*, 717 F.3d at 768.
[61] *Dodds v. Richardson*, 614 F.3d 1185, 1195–96 (10th Cir. 2010) (internal quotation marks and citations omitted); *see Schneider*, 717 F.3d at 770 ("[T]he challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" (citation omitted)).

'moving force' behind the injury alleged."[62] "The causation [prong] is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate . . . supervision[.]"[63]

Daggett County contends the "causation prong cannot be met" "[w]ithout admissible evidence showing Sheriff Jorgensen knew that he was failing 'to investigate, discipline, or otherwise supervise'" the official who used excessive force against Plaintiffs.[64] Daggett County further argues that because Sheriff Jorgensen "lacked any knowledge of Cox'[s] misconduct and he had no 'personal involvement' relating to Cox'[s] actions[,] [t]here is no affirmative link" between the alleged failure to supervise and discipline and Plaintiffs' injuries.[65]

Even without the benefit of the guilty plea, a reasonable jury could find causation. Deputy Cox testified that on his first day at the Jail, Commander Lail—handpicked by Sheriff Jorgensen[66]—informed him, "it was a relaxed environment and . . . if [he] needed to take a nap during [his] night shift, that was common practice."[67] The deputy testified that many Jail officers such as Commander Lail often tapped or attempted to tap each other in the genitals[68] and Commander Lail "often played around with [Tasers] and acted like he was going to . . . tase the other officers."[69] Deputy Cox also testified he saw Commander Lail pretend to tase "just about everybody" at the Jail including other guards and civilian controllers, and even heard about

---

[62] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see Monell*, 436 U.S. at 694.
[63] *Waller*, 932 F.3d at 1284 (quoting *Schneider*, 717 F.3d at 770); *see Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022) ("[The court] must rigorously scrutinize the causation element when the municipal policy is not itself unconstitutional to ensure that the municipality is not held liable solely for its employees' actions." (citing *Brown*, 520 U.S. at 404)).
[64] Second Mot. Summ. J. 10.
[65] *Id.* at 11.
[66] Jorgensen Dep. 31:25–32:4.
[67] Cox Dep 12:19–22. "[B]y 11:00 everybody besides myself was asleep." *Id.* at 13:15–16.
[68] *Id.* at 15:24–16:17; *cf.* 103:20–104:1 ("I'm not 100 percent positive whether contact was made or not.").
[69] *Id.* at 17:17–24.

10

Commander Lail activating a Taser near a schoolteacher.[70] In fact, Deputy Cox said he did not know anyone who faced discipline for improper Taser use.[71]

Deputy Cox further testified he saw an open alcohol container in Commander Lail's vehicle.[72] When Deputy Cox reported the incident to Commander Lail's supervisor, the commander faced no discipline. Instead, Commander Lail "pulled [Deputy Cox] into his office and said, 'I know what you did,' and stared at [him] until [he] got up and left [the] office."[73] Deputy Cox testified that "[n]obody was really held accountable for the things that they did there. And with the culture being the way it was, horseplay was prevalent throughout the whole jail."[74] "The same thing I was observing was the things I was enacting."[75]

During the relevant period, Sheriff Jorgensen did not frequently interact with inmates or closely supervise Jail personnel.[76] Deputy Cox reported he saw Sheriff Jorgensen only once at the Jail.[77] Sheriff Jorgensen testified Daggett County did not provide "the money to have the kind of supervision [they] needed round the clock[,]"[78] which might have prevented the Taser incidents.[79] He said that because there was not supervision "on every shift[,]" "the fox was let around in the hen house a little bit."[80]

---

[70] *Id.* at 19:1–13. A civilian schoolteacher informed Sheriff Jorgensen in April 2016 about an incident between herself and Commander Lail. ECF No. 141-26, at 1. The teacher reported that Commander Lail made "wise-crack comments[,]" yelled at her to "[g]et back to class and teach!", and pointed a Taser on the ground by her feet. *Id.*
[71] Cox Dep. 19:21–24.
[72] *Id.* at 25:23–26:4.
[73] *Id.* at 26:13–19.
[74] *Id.* at 36:10–14.
[75] *Id.* at 38:7–11.
[76] Jorgensen Dep. 129:12–130:11; Jorgensen Decl. ¶ 15, ECF No. 127.
[77] Cox Dep. 51:10–18, 14:13–15 ("I didn't meet the sheriff probably for six months[.]").
[78] Jorgensen Dep. 127:23–25.
[79] *Id.* at 127:14–128:5.
[80] *Id.* at 128:1–5.

Overall, the undisputed facts show Sheriff Jorgensen did very little to supervise Jail personnel. A reasonable jury could find Sheriff Jorgensen's lack of supervision and discipline was the "moving force" behind Plaintiffs' injuries,[81] meaning he "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive . . . plaintiff[s] of [their] constitutional rights."[82]

### C. The Court Did Not Err in Applying the Deliberate-Indifference Standard.

In its prior decision, the court concluded that a reasonable jury could find Sheriff Jorgensen had notice his actions or failures to act were "substantially certain" to result in injury to an inmate but he deliberately disregarded the risk.[83] Daggett County argues the court erred. Citing various caselaw, it contends Plaintiffs must prove Sheriff Jorgensen had the same intent as Deputy Cox: to "act[] maliciously and sadistically for the very purpose of causing harm."[84] Under this standard, Daggett County argues the evidence cannot support the finding that Sheriff Jorgensen personally participated in the constitutional violation.[85] For their part, Plaintiffs contend Daggett County conflates municipal liability with supervisory liability.[86]

Daggett County cites *Johnson v. Davis County*, an unpublished Tenth Circuit case, for the proposition that "the elements for supervisory and municipal liability are the same."[87] But Daggett County misreads the case and ignores the clear distinction between the two types of

---

[81] Summ J. Order 24; *see Brown*, 520 U.S. at 404 ("The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.").
[82] *Schneider*, 717 F.3d at 768 (quoting *Dodds*, 614 F.3d at 1211 (Tymkovich, J., concurring)).
[83] Summ. J. Order 24–25.
[84] Second Mot. Summ. J. 13.
[85] *Id.* at 13–15.
[86] *See* Opp'n 28–29.
[87] *Johnson v. Davis County*, No. 21-4030, 2022 WL 830202, at *3 (10th Cir. Mar. 21, 2022) (unpublished) (quoting *Burke ex rel. Williams v. Regalado*, 935 F.3d 960, 999 (10th Cir. 2019)).

12

liability. In *Johnson*, the Tenth Circuit did not apply the standard Daggett County proposes: that a defendant is liable in the context of municipal liability only if a supervisor personally participates in the constitutional violation.[88] The court instead assessed whether defendants were *deliberately indifferent*.[89] Indeed, it reasoned that "plaintiffs [had] conflate[d] the deliberate indifference required to establish a claim for inadequate medical care against an individual defendant with the deliberate indifference required to support municipal liability."[90] As the court made clear, the "deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[91]

The Tenth Circuit teaches that "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation."[92] At issue here is municipal liability as to Daggett County—not supervisory liability as to Sheriff Jorgensen. They are distinct theories.[93] Daggett County's attempt to propose a different standard for municipal liability by citing caselaw including a concurrence[94] and a dissent[95] is unavailing.[96]

---

[88] Second Mot. Summ. J. 12–13.
[89] *Johnson*, 2022 WL 830202, at *4 ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it . . . deliberately chooses to disregard the risk of harm." (quoting *Waller*, 932 F.3d at 1284)).
[90] *Id.* at *5.
[91] *Id.* at *4 (quoting *Waller*, 932 F.3d at 1284).
[92] *Schneider*, 717 F.3d at 771 n.5 (citing Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, §§ 6.02[C], 7.07 (3d ed. 1997)).
[93] *See id.* at 767, 769 (contrasting the standards for individual liability and municipal liability).
[94] *See* Second Mot. Summ. J. 13 (arguing that where the alleged violation is "discriminatory intent," the supervisor must "share the state of mind" with the subordinate) (citing *Dodds*, 614 F.3d 1185 (Tymkovich, J., concurring)).
[95] *See id.* at 14–15 (arguing that the Supreme Court "eliminated the very concept of 'supervisory liability'") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (Souter, J., dissenting)).
[96] Daggett County misapplies Tenth Circuit cases. *See Wilson v. Montano*, 715 F.3d 847, 856–58 (10th Cir. 2013) (analyzing supervisory liability, not municipal liability); *Johnson*, 2022 WL 830202 (discussed above). And Daggett County misreads *Burke ex rel. Williams v. Regalado*. Second Mot. Summ. J. 12. In *Regalado*, the Tenth Circuit

In sum, the court properly applied the deliberate indifference standard to Plaintiffs' municipal liability claim. The court next examines whether a reasonable jury could find deliberate indifference even without considering Sheriff Jorgensen's guilty plea.

### D. Reasonable Jurors Could Find Sheriff Jorgensen Was Deliberately Indifferent to the Risk of Plaintiffs' Injuries Even Without the Withdrawn Guilty Plea.

On a failure-to-supervise claim, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[97] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[98] It "may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[99] "While typically notice is 'established by proving the existence of a pattern of tortious conduct,' it can also be established 'in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'"[100]

---

reasoned that because the plaintiff had not alleged the policymaker "personally participated in [the] underlying constitutional violation[,]" municipal liability was "predicated on [the policymaker] maintaining a policy or custom that resulted in the underlying violation." 935 F.3d at 998. So too here. Plaintiffs do not allege Sheriff Jorgensen personally participated in the alleged violations. *See* Am. Compl. At issue was his alleged failure to supervise and discipline Jail staff.

[97] *Waller*, 932 F.3d at 1284 (citation omitted).

[98] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *Brown*, 520 U.S. at 409). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities[.]'" *Id.* at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

[99] *Barney*, 143 F.3d at 1307. "For example, when policymakers have actual or constructive notice that a training deficiency caused city employees to commit constitutional violations, the city may be deliberately indifferent if it chooses to maintain its deficient training program." *George v. Beaver County*, 32 F.4th 1246, 1253 (10th Cir. 2022).

[100] *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting *Waller*, 932 F.3d at 1284); *see Brown*, 520 U.S. at 409.

The court concluded a reasonable jury could find Sheriff Jorgensen was deliberately indifferent.[101] However, Daggett County contends the withdrawn plea was the "lynchpin" of the court's reasoning.[102] It argues that absent evidence of the guilty plea, no reasonable jury could find deliberate indifference. Plaintiffs contend the record supports the court's finding even without the plea.

Significant undisputed evidence undergirds the court's prior decision. Sheriff Jorgensen knew in April 2016 that his hand-picked Jail Commander[103] sparked a Taser and pointed it at the ground directly in front of a civilian teacher.[104] Sheriff Jorgensen testified he considered the incident as "horseplay[.]"[105] He later told Commander Lail his behavior was "unacceptable" and ordered him to apologize to the teacher.[106] Another Jail deputy testified that in July 2016 he raised concerns to Sheriff Jorgensen about Commander Lail's behavior.[107] Specifically, he expressed concern to Sheriff Jorgensen about Commander Lail allegedly falsifying his time cards, touching inmates in the genitals, calling inmates names, and knowing that Jail employees might have driven drunk or wrestled inmates.[108] The deputy testified Sheriff Jorgensen said he was going to talk to Commander Lail but the deputy "felt like [Sheriff Jorgensen] was dismissive."[109] In particular, the deputy testified Sheriff Jorgensen said something to the effect

---

[101] Summ. J. Order 26.
[102] Second Mot. Summ. J. 11.
[103] Jorgensen Dep. 31:25–32:4.
[104] ECF No. 141-26, at 1.
[105] Jorgensen Dep. 106:24–107:1.
[106] *Id.* at 107:2–10.
[107] Dep. of Brian Carl Thompson ("Thompson Dep.") 31:1–7, ECF No. 141-13.
[108] *Id.* at 36:13–23; UDOC Report 21.
[109] Thompson Dep. 31:10–15.

of, "I don't know why you're saying these things";[110] "Ben [Lail] was the boss and [deputies] had to kind of do stuff the way he wanted."[111]

Sheriff Jorgensen declared he did not frequently interact with inmates or go to the Jail's housing areas.[112] He further testified Daggett County did not provide enough money to hire adequate supervision. If he "had a budget that allowed [him] to have [supervision] on every shift around the clock" it "would [have] solve[d] all of th[e] problem[s]."[113] Specifically, Sheriff Jorgensen testified that more money and supervisors "could have prevented [Deputy Cox from tasing the inmates]."[114]

The collective facts suggest Sheriff Jorgensen did not closely supervise deputies. He delegated supervision to his chosen Jail Commander. And he had notice only four months before Deputy Cox tased Plaintiffs that Commander Lail screamed at a schoolteacher, sparked a Taser, and then pointed it near her feet. Two months later, Sheriff Jorgensen had notice Commander Lail may have tapped an inmate's genitals (or at least pretended to), called inmates names, falsified time cards, and had knowledge about employees possibly driving drunk. Ample record evidence would support a finding that Sheriff Jorgensen knew the Jail lacked adequate supervision. In the Sheriff's words, "the fox was let around in the hen house a little bit."[115] For these reasons, a reasonable jury could find that Sheriff Jorgensen had notice his supervisory

---

[110] *Id.* at 31:17–23.
[111] *Id.* at 36:4–12.
[112] Jorgensen Decl. ¶ 15; *see* Jorgensen Dep. 129:12–130:11 ("I'm not saying that I went in the cell blocks and in the . . . lockdown portion of the jail[,] . . . just supervisory functions, [to] see how things are going.").
[113] Jorgensen Dep. 127:22–128:5.
[114] *Id.* at 128:12–25.
[115] *Id.* at 128:4–5.

16

failures created a risk that a deputy would assault an inmate and that he knowingly disregarded the risk.[116]

**ORDER**

For the foregoing reasons, the court DENIES Defendant's Second Motion for Summary Judgment or in the Alternative to Exclude Sheriff Jorgensen's Withdrawn Plea from Evidence.[117] The court DENIES as moot Plaintiffs' Motion for Leave to File Sur-Reply.[118]

Signed September 13, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[116] *Cf. Wardleigh v. Slater*, No. 1:07-cv-00108, 2010 WL 414367, at *4 (D. Utah Jan. 28, 2010) (finding that "no evidence of a single other incident or allegation of . . . abuse of a . . . [j]ail detainee that resulted from poor rule enforcement" and finding "evidence that jail guards were punished if they were caught playing computer games").
[117] ECF No. 225.
[118] ECF No. 248.