Jason Groth (Bar No. 16683)
Abigail Cook (Bar No. 19781)
Thomas Ford (Bar No. 19795)
**ACLU OF UTAH FOUNDATION, INC.**
311 South State Street, Ste. 310
Salt Lake City, UT 84111
jgroth@acluutah.org
acook@acluutah.org
tford@acluutah.org
Telephone: (801) 521-9862

John Mejia (Bar No. 13965)
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
John.mejia@chrisjen.com
Telephone: (801) 323-5000

*Counsel for Plaintiffs Dustin Porter,
Joshua Asay, and Steven Drollette*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DUSTIN PORTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DAGGETT COUNTY,<br><br>Defendant. | Consolidated Case Nos. 2:18-cv-00389-DBB-DAO, 2:18-cv-0422, & 2:19-CV-00188<br><br>**PLAINTIFFS STEVEN DROLLETTE AND JOSHUA ASAY'S MOTION FOR AN AWARD OF ATTORNEY FEES AGAINST DAGGETT COUNTY UNDER § 1988 AND MEMORANDUM IN SUPPORT**<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs Steven Drollette and Joshua Asay (collectively "Prevailing Plaintiffs"), respectfully move the Court as follows:

1. For an award of attorneys' fees and costs in the amount of $820,810.20 against Defendant Daggett County ("Daggett"), pursuant to 42 U.S.C. § 1988, DUCivR 54-2, and Rule 54(d) of the Federal Rules of Civil Procedure;

2.  For any such other relief as may be appropriate.

## MEMORANDUM IN SUPPORT OF MOTION

Pursuant to the Amended Judgment in this case, and pursuant to Federal Rule of Civil Procedure 54 and DUCivR 54-2, counsel for Prevailing Plaintiffs seek an award of attorneys' fees and costs from Daggett under 42 U.S.C §§ 1983 & 1988(b) in the amount of $820,810.20

This lawsuit arose out of Daggett's unconstitutional treatment of incarcerated persons in their care, including Plaintiffs. On April 23, 2024, Prevailing Plaintiffs obtained a jury verdict and monetary damage awards in their favor against Daggett upon the jury's finding that Daggett deprived the Prevailing Plaintiffs of their constitutional right to be free from cruel and unusual punishment while incarcerated at the Daggett County Jail. Verdict, ECF No. 424. The Court entered Judgment in favor of the Prevailing Plaintiffs against Daggett on May 29, 2024. Judgment, ECF No. 452. On March 3, 2025, the Court entered a final order clarifying judgment "in favor of Plaintiff Steven Drollette against Daggett County in the amount of $65,000.00 on Steven Drollette[']s § 1983 claim. Judgment in favor of Joshua Asay against Daggett County in the amount of $228,800.00 on Joshua Asay[']s § 1983 claim." Amended Judgment, ECF No. 520.

Prevailing Plaintiffs now move the Court to award them reasonable attorney fees and costs for the legal services provided on their behalf, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b). These fees include the hours worked by the attorneys and paralegals on the case, as well as the reasonable expenses not included in their bill of costs of the sort typically billed to private clients. Prevailing Plaintiffs are the prevailing parties in this case. Prevailing Plaintiffs' counsel is entitled to a full and complete fee award for all reasonable work, time, and expenses expended on the Prevailing Plaintiffs' claims. Prevailing Plaintiffs' claims all stem from a common set of facts and related legal theories. Prevailing Plaintiffs achieved their primary intended goal in bringing this litigation, holding Daggett responsible for its deliberate indifference to the rights and dignity of the incarcerated individuals in Daggett's care.

## BACKGROUND

1. Each Plaintiff in the three actions consolidated into this case proceeded to trial against Daggett County on one claim: that Daggett County violated their rights to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

2. A jury found that Daggett, through its then-Sheriff Jerry Jorgensen, maintained an unconstitutional policy or custom of failing to supervise or discipline its employees. Special Verdict Form, ECF No. 424.

3. The jury further found that Daggett's policy or custom of failing to supervise or discipline its employees directly caused a violation of Prevailing Plaintiffs' right to be free of cruel and unusual punishment. *See id.*

4. The jury also found that Daggett, through Mr. Jorgensen, acted with deliberate indifference to the obvious and known consequences to Prevailing Plaintiffs and Mr. Olsen of its failure to supervise or discipline its employees. *See id.*

5. For one plaintiff who went to trial, Dustin Porter, the jury found that although Daggett maintained an unconstitutional policy, that policy did not cause a deprivation of his rights. *See id.*

6. Each plaintiff's Eighth Amendment claim that was brought to trial in this consolidated case arose out of common facts associated with Daggett's deliberate indifference to the obvious and known consequences of failing to supervise or discipline its employees.

7. Each Plaintiffs' claim brought to trial in this case was based on the same legal theory that Daggett is liable under 42 U.S.C § 1983 for violations of Plaintiffs' rights under the Eighth Amendment by failing to supervise or discipline its employees.

8. One of Prevailing Plaintiffs and Plaintiffs' counsels' main objectives in bringing this litigation was to hold Daggett accountable for its actions to prevent the future abuse and deprivation of constitutional rights to incarcerated people across the State of Utah.

9. On May 16, 2018, Plaintiffs Drollette and Porter filed a complaint under 42 U.S.C § 1983 alleging that Daggett and other defendants violated their Eighth Amendment rights while in the care and custody of Daggett at the Daggett County Jail. Complaint, ECF No. 2.

10. On June 7, 2018, Plaintiffs Drollette and Porter filed an amended complaint. Amended Complaint, ECF No. 3.

11. On May 30, 2018, Plaintiff Asay filed his complaint. Case No. 2:18-cv-00422 Docket No. 2.

12. Mr. Olsen filed his complaint at a later date.

13. Daggett moved to consolidate Prevailing Parties' separately-brought cases three times. ECF Nos. 22, 69, and 107. One of the main arguments in each of those motions was that the three cases all involved a significant amount of identical material facts, parties, and legal theories. On March 1, 2021, the Court agreed and granted Daggett's third motion to consolidate Mr. Porter and Mr. Drollette's case with Mr. Asay and Mr. Olsen's cases.

14. Even before the cases were formally consolidated for purposes of trial, the plaintiffs and the defendants agreed that all discovery would be jointly conducted for the three actions.

15. On August 2, 2018, Daggett, Sheriff Erik Bailey, and Mr. Jorgensen, filed an answer to Plaintiffs' complaint denying that Plaintiffs were entitled to any of the requested relief. Daggett Answer, ECF No. 18.

16. On that same date, the State Defendants filed motions to dismiss in both cases.

17. Discovery was extensive and voluminous in this case and was prolonged due to delays caused by the COVID pandemic.

18. For example, the Utah Department of Corrections ("UDC") produced around 10,000 pages of documents in response to a subpoena by the plaintiffs. Those documents included thousands of internal Daggett records that Daggett had turned over to the UDC. Those documents also included extensive documents and dozens of hours of recorded interviews and footage from the jail related to the UDC's investigation at Daggett.

19. Daggett also produced nearly 3,000 pages of internal documents, many of which were produced on a supplemental basis.

20. Simply reviewing that volume of documents was an extremely time-consuming exercise. Each attorney involved in taking depositions, briefing Daggett's two summary judgment motions, and going to trial were all required to review large portions of the record.

21. For efficiency, Prevailing Plaintiffs enlisted their paralegal Ms. Nash to create a time-saving index for use to expedite review for attorneys and paralegals in deposition preparation, brief drafting, and trial.

22. The parties conducted depositions of over 20 fact witnesses and four expert witnesses

23. On August 20, 2021, Daggett filed its first motion for summary judgment. Defs.' Mot. for Summ. J., ECF No. 126.

24. Daggett's asserted statement of undisputed statements of facts was sparse and primarily based on three declarations.

25. To counter Daggett's assertions of undisputed facts and to affirmatively lay out their cases, Prevailing Plaintiffs were compelled to create a voluminous fact section, which required extensive knowledge of the massive record developed in this litigation.

26. On February 16, 2022, the Court denied Daggett's first motion for summary judgment on Plaintiffs' Eighth Amendment claims for failing to supervise and discipline its employees. Mem. Decision and Order re: Defs.' Mot. for Summ. J., ECF No. 160.

27. On June 30, 2023, Daggett filed its second motion for summary judgment on Plaintiffs' same Eighth Amendment claims against Daggett. Defs.' Second Mot. for Summ. J., ECF No. 225.

28. This motion again compelled Prevailing Plaintiffs to engage in extensive review of the record and additional briefing.

29. On September 13, 2023, the Court denied Daggett's second motion for summary judgment. Mem. Decision and Order Denying Def.'s Second Mot. for Summ. J., ECF No. 251.

30. A jury trial was conducted from April 8–19, 2024.

31. On April 23, 2024, the jury reached unanimous verdicts in favor of the Prevailing Plaintiffs against Daggett. Min. Entry for Trial (4/23/24), ECF No. 416.

32. The jury unanimously found: (1) Daggett liable for depriving Steven Drollette of his Eighth Amendment right to be free from cruel and unusual punishment and awarded him $65,000 in damages; (2) Daggett liable for depriving Joshua Asay of his Eighth Amendment right to be free from cruel and unusual punishment and awarded him $228,000 in damages; (3) Daggett liable for depriving Joshua Olsen of his Eighth Amendment right to be free from cruel and unusual punishment and awarded him $58,500 in damages; and (4) Dustin Porter proved Daggett maintained a policy or custom of failing to supervise or discipline its employees but did not prove that this failure directly caused Mr. Porter to experience cruel and unusual punishment. Special Verdict Form, ECF No. 424.

33. The litigation was both lengthy and complex. The litigation lasted nearly six years from the filing of Plaintiffs' actions in May of 2018 to the return of a jury verdict returned on April 23, 2024.

34. After October 2019, Daggett and Sheriff Jorgensen were the only defendants actively litigating this action. (Sheriff Bailey was named in his official capacity, so he was

effectively identical to Daggett.) Daggett and Sheriff Jorgensen were represented by the same counsel.

35. Most of the discovery and motion practice in this case happened after October 2019.

36. This litigation has involved contentious opposition and maneuvering from Daggett at nearly every stage and various instances of Daggett re-litigating the several issues it lost on more than once, most prominently filing two motions for summary judgment and repeatedly revisiting the issue of the meaning and admissibility of Sheriff Jorgensen's' plea in abeyance.

37. Daggett had opportunities to resolve this case, including two court-led mediations and other informal attempts to settle, without going to trial and without the need for lengthy and complex litigation. *See* ECF Nos. 60, 218.

38. Plaintiffs' litigation efforts in this case included 23 depositions, at least 66 substantive motions, and a ten-day jury trial.

39. Plaintiffs' motion practice includes extensive and detailed motions at every stage of proceedings, from the original complaint to post-trial motions. The motion papers and exhibits totaled thousands of pages.

40. In anticipation of trial, the parties filed a combined total of approximately 18 *motions in limine* that included hundreds of pages of text and exhibits.

41. The number of hours expended by Plaintiffs' counsel for Steven Drollette and Joshua Asay was 1978.1 hours. *See* Exhibit 1, 2 & 4. The value of said hours at today's rates equal $726,300.00. *See* Exhibit 1, 2 & 4.

42. The number of hours expended by Plaintiffs' paralegals was 357.5 hours. *See* Exhibit 1 & 2. The value of said hours at today's rates equal $40,875.00 *See* Exhibit 1 & 2.

7

43. Finally, Plaintiffs incurred $53,635.25 in expenses not previously billed in their Bill of Costs in prosecuting this case. *See* Exhibit 3.

## LEGAL STANDARD AND ARGUMENT

The Civil Rights Attorney's Fee Awards Act allows prevailing parties in civil rights cases, including suits brought under 42 U.S.C. § 1983, to seek reimbursement for attorney fees so long as those fees are reasonable. 42 U.S.C. § 1988(b); *Valdez v. Macdonald*, 66 F.4th 796, 835 (10th Cir. 2010). "Because the purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances, 'a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Valdez*, 66 F.4th at 836 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a prevailing party. *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1989); *see Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997). The implication is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees. *Robinson*, 160 F.3d at 1280.

In a request for reimbursement under § 1988(b), a plaintiff must prove two elements: "(1) that [the plaintiff] was the 'prevailing party' in the proceedings; and (2) that [the plaintiff]'s fee request is 'reasonable.'" *Sims v. Young*, 2023 WL 8083132, *2 (D. Utah 2023); *Robinson*, 160 F.3d at 1280 (*quoting Hensley,* 461 U.S. at 433).

### A. Plaintiffs Drollette and Asay Prevailed at Trial

Here, there is no question that Mr. Drollette and Mr. Asay prevailed at trial and are thus entitled to reasonable attorney fees. Under its "generous formulation" of the term, the Supreme Court has held that a plaintiff "prevails" when actual relief on the merits of their claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way

that directly benefits the plaintiff." The "prevailing party inquiry does not turn on the magnitude of the relief obtained" and the "degree of the plaintiff's success' does not affect eligibility for a fee reward. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989)); *see also Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997). Accordingly, a plaintiff who succeed[ed] on any significant issue in litigations which achieves some of the benefit the parties sought in bringing suit is a prevailing party. *Texas State Teachers Ass'n,* 489 U.S. at 789.

On May 29, 2024, the Court entered Judgment in favor of the Prevailing Plaintiffs against Daggett and awarded them significant monetary damages. Thus, the Prevailing Plaintiffs are the prevailing parties in this case.

### B. Plaintiffs' Fees Should Not Be Reduced Because of Claims in the Case on Which they Did not Prevail

Prevailing Parties anticipate that Dagget might point to the fact that Sheriff Jorgensen was granted summary judgment on Prevailing Plaintiff's claims against him, or that Mr. Porter's claim against Daggett County did not prevail, or to other claims that were not resolved in Prevailing Plaintiffs' favor to argue that their attorney fees should be reduced. But demanding a reduction of fees based by pointing to unsuccessful claims is "legally indefensible where all of the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories." *Burch v, La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001); *Robinson*, 160 F.3d at 1283; *see also Hampton v. Dillard Dep't Stores, Inc.,* 247 F.3d 1091, 1119 (10th Cir. 2001) (refusing fee reduction despite partial success where all claims stemmed from same facts).

The Prevailing Plaintiffs' claims against Daggett in this case all arose from the same common core of facts with any unsuccessful claims. Prevailing Plaintiffs and their consolidated plaintiffs' cases involved proving that serious abuse they experienced while incarcerated at the Daggett County Jail amounted to a violation of their rights and proving that Daggett had a policy

9

or practice that led to these rights violations. To prove that Daggett County, Sheriff Jorgensen, or any other person was liable for violations of those rights involved a common set of facts.

Daggett will not be able to point to any substantial part of the factual record in this case and argue that Prevailing Plaintiffs would only have needed to develop those facts in relation to an unsuccessful claim alone. For example, while Mr. Porter's claims were not successful, his deposition and trial testimony were part of the same core of common facts relating to Daggett and other defendants' potential liability.

Indeed, the parties and the Court agreed that there were so many common facts at play in proving these cases that it was appropriate to try all of the Plaintiffs' claims against Daggett at the same time in one trial. Any argument by Daggett that the actions in this case do not all revolve around a common core of facts would ring especially hollow in light of their repeated and eventually successful motions to consolidate arguing otherwise.

Moreover, Prevailing Plaintiffs' legal theories were closely interrelated across all claims they, Mr. Porter, and Mr. Olsen made in this case. Daggett's own approach to this case confirms this proposition. For example, Sheriff Jorgensen and Daggett County made their first motion for summary judgment jointly and employed the same legal arguments against each plaintiff in doing so. While Sheriff Jorgensen successfully defended against liability based on qualified immunity, the legal question of whether Plaintiffs could proceed on their claims against Daggett was very closely related to the legal issues raised by Sheriff Jorgensen.

For these reasons, the fact that Prevailing Plaintiffs (and Mr. Porter) did not prevail on every claim against every defendant in this case does not justify any reduction in fees.

### C. Plaintiffs' Fee Request is Reasonable

Plaintiffs' attorney fees request in this case is reasonable. "A reasonable fee is the product of a reasonable rate in the relevant community multiplied by the number of hours reasonably spent

10

on the litigation." *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006); *see also Hensley*, 461 U.S. at 433. "'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' which produces the "so-called 'lodestar amount.'" *Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2010) (quoting *Hensley*, 461 U.S. at 433)).

### i. *Hours*

To produce the "lodestar amount" and assess the reasonableness of an attorney's claimed hours, the court considers: (1) whether the hours are supported by adequate billing records; (2) whether the attorney exercised billing judgment; and (3) whether the hours expended on each task are reasonable. *See Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

### a) **Billing Records**

In assessing billing records, "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* In support of this motion, Plaintiffs have filed an Affidavit from Mr. Groth setting out the rates and hours of each attorney and paralegals seeking fee reimbursement on behalf of Plaintiffs in connection with this case. *See* Exhibit 1.

This affidavit attaches detailed billing records that specify the billable tasks accomplished, the hours expended on each billable task, and the dates the billable tasks were completed. *See* Exhibit 2.

Each attorney and paralegal in this case endeavored to provide enough detail to put the Court and Daggett on clear notice of the nature of the task they were completed in for the allotted times. The vast majority of entries for each biller is detailed, and the few entries that are not as rich

in detail still make clear the nature of the task the biller undertook. Overall, each entry is sufficiently detailed to merit compensation.

### b) Billing Judgment

Next, the Court must ensure that the party's counsel has "exercised billing judgment." *Case*, 157 F.3d at 1250. Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended.

The amount of legal fees sought by Plaintiffs in this case indicates restraint and prudent billing by Plaintiffs. Given the contentious and litigious approach by Daggett, Plaintiffs had no choice but to oblige Daggett by spending the time and money necessary to bring this action to trial. Nevertheless, Plaintiffs, on their own accord, exercised sound billing judgment in excluding unreasonable billable hours from the instant fee request. For example, in preparing his report of hours billed, Mr. Mejia has omitted a good portion of the time he spent on this consolidated case that is not reasonably billable to Daggett. Items omitted include time the legal team spent in mediation with other defendants, or time spent related to communications with the public about the case. One instance of Mr. Mejia's time that may give the Court pause is the time he spent on the motions to dismiss by the State Defendants. It is reasonable to bill those hours to Daggett because had the State Defendants prevailed, it would have significantly increased the chance that Prevailing Plaintiffs' claims against Daggett would be vulnerable to future dispositive motions by Daggett. Beyond that somewhat removed example, each of the time entries by the attorneys and paralegals in this case are directly attributable to the Prevailing Plaintiffs' claims against Daggett.

In sum, Plaintiffs have exercised sound billing judgment underlying their attorney fees award requests.

### c) Reasonableness of Hours

#### 1. Plaintiffs Rates are Prevailing and Reasonable

"[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). This means the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.*

The rates identified by Plaintiffs are prevailing and customary for attorneys of their skill level, experience, and reputation. In recent years, Utah courts have routinely awarded hourly rates of over $400 for attorneys and over $150 for support staff such as paralegals. *See, Mglej v. Gardner*, 2022 WL 2065588, at *3 (D. Utah June 8, 2022) (awarding up to $425 for attorneys and $245 for paralegals and assistants); *Utah Physicians for a Healthy Env't., Inc. v. Diesel Power Gear, LLC*, 2021 WL 254268, at *13 (D. Utah Jan. 26, 2021) (awarding up to $425 for attorneys and $185 for paralegals); *Cinemapub, L.L.C. v. Petilos*, 2018 WL 4621759, at *2 (D. Utah Sept. 26, 2018) (awarding up to $385 for attorneys and $120 for law clerks). As set forth below, Plaintiffs request individualized hourly rates for attorneys and staff commensurate with their experience and the local market. As such, Plaintiffs' counsel's rates underlying their fee award request are reasonable and reflective of the prevailing market rates.

### 2. *Plaintiffs Hours are Reasonable*

Finally, the court "look[s] at the hours expended on each task to determine if they are reasonable." *Id.* The court "approach[es] this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients." *Case,* 157 F.3d at 1250. *Robinson,* 160 F.3d at 1281. "[T]he overriding consideration [is] whether the attorney's hours were 'necessary' under the circumstances." *Robinson,* 160 F.3d at 1281. In making the reasonableness determination, the Court considers: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services. *Case,* 157 F.3d at 1250.

13

Plaintiffs' pursuit of relief in this case involved lengthy and complex litigation. Daggett contested virtually everything throughout the entirety of the case, and Plaintiffs' counsel were obliged to respond to the litigation tactics of Daggett. Plaintiffs were required to prove, not only that they experienced cruel and unusual punishment during incarceration at the Daggett County Jail, but that Daggett (through Sheriff Jorgensen) was the moving force behind the Eighth Amendment violations they suffered and that Daggett (through Sheriff Jorgensen) acted with deliberate indifference to the known and obvious consequence that people incarcerated at the Daggett County Jail would be deprived of their Constitutional rights. Proving Plaintiffs' claims involved extensive investigative and evidentiary efforts and required Plaintiffs' counsel to uncover and establish illusive facts at trial in order to prevail.

Similarly, Plaintiffs were forced to accommodate Daggett's litigious approach to and maneuvers during this case. Daggett's insistence on repeatedly re-litigating issues previously decided in this case forced Plaintiffs to allocate considerable hours to re-addressing previously resolved issues such as, for example, responding to Daggett's second motion for summary judgment and Daggett's repeated attempts to exclude and/or seal Mr. Jorgensen's guilty plea for the crime of official misconduct.

In sum, and with consideration of the reasonableness factors, the amount of legal fees sought by Plaintiffs in this case is modest and reasonable in this context.

### D. The Requested Amount of Costs is Reasonable

Plaintiffs incurred $53,635.25 in expenses not previously billed in their Bill of Costs in prosecuting this case. *See* Exhibit 3. While only those items listed under § 1920 may be awarded as costs, other out-of-pocket **expenses** incurred during litigation may be awarded as attorneys' fees under § 1988 if: (1) the **expenses** are not absorbed as part of law firm overhead but are normally

billed to a private client; and (2) the **expenses** are reasonable. *See Bee v. Greaves,* 910 F.2d 686, 690 (10th Cir. 1990); *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995).

Here, Plaintiffs requested costs not previously billed in their bill of costs are reasonable because they are they were both necessary to this lawsuit and the type of expenses that are normally billed to a private client.

## CONCLUSION

For all the reasons stated above, Plaintiffs respectfully move the Court to enter judgment in favor of the Prevailing Plaintiffs against Daggett for an award of attorney fees in the amount of $820,810.20

Respectfully submitted this 10 day of March, 2025.

                                                     Jason Groth
                                                     Attorney for Plaintiffs Joshua Asay, Dustin Law Porter, and Steven Drollette

## CERTIFICATE OF SERVICE

I hereby certify that on this 10 day of March, 2025, a true and correct copy of the foregoing was served on Defendant via ECF.

                                                Jason Groth
                                                Attorney for Plaintiffs Joshua Asay, Dustin Law Porter, and Steven Drollette